No. 99-558

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 79N

VICKIE WETHERILL,

Petitioner and Appellant,

v.

MITCH WALTERS,

Defendant and Respondent.

APPEAL FROM: District Court of the Nineteenth Judicial District,

In and for the County of Lincoln,

The Honorable Michael C. Prezeau, Judge presiding.

COUNSEL OF RECORD:

**For Appellant:**

William A. Douglas, Douglas Law Firm, P.C.; Libby, Montana

**For Respondent:**

Amy N. Guth, Attorney at Law; Libby, Montana

Submitted on Briefs: January 13, 2000

Decided: March 23, 2000

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1.Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2.Vickie Wetherill appeals from the Order Dissolving Temporary Order of Protection issued by the Nineteenth Judicial District Court, Lincoln County. We affirm.

¶3.This appeal raises the following issue:

¶4.Whether the District Court erred in dissolving the Temporary Order of Protection?

## FACTUAL BACKGROUND

¶5.On April 23, 1999, Wetherill petitioned the Lincoln County Justice Court for a temporary order of protection. In her petition, Wetherill declared that she was in danger of harm and that Mitch Walters, the Chief of the Troy Police Department, had been stalking her. In support of her assertion that Walters was stalking her, she made the following allegations:

¶6.On February 23, 1999, while Wetherill was working at the BP gas station in Troy, Montana, Walters came in for coffee. Walters asked Wetherill what her husband was doing while she was working and inquired about the state of the Wetherills' marriage. Walters told Wetherill that he had seen her husband's vehicle at a bar and, as he left the station, Walters stated that he would just have to slap Wetherill's husband around. Wetherill was concerned and contacted the mayor's office.

¶7.On March 11, 1999, Walters came into the BP station with a tape recorder. Wetherill alleged that Walters "started pointing his hook at me and being very aggressive in saying he wanted me to call him at home to get this issue settled."[1] Wetherill told Walters that

she had talked to the mayor who would contact him to set up a meeting. Walters raised his voice, stating that he would not resolve this dispute through the mayor and rapped his prosthesis on the counter.

¶8.On March 18, 1999, Wetherill sent Walters a letter requesting that he cease any contact with her and her husband.

¶9.On March 27, 1999, Walters was in the store when Wetherill reported for work. She went into the office to count money in order to avoid him. Later that night, Walters drove his vehicle through the BP parking lot.

¶10.On April 5, 1999, Walters entered the station while Wetherill was working and asked for coffee. Wetherill told him the station was out of coffee, and he left.

¶11.On April 18, 1999, Walters came into the BP station with a coffee mug. Wetherill asked him if he was refusing to abide by her request that he cease contact. Walters raised his voice and stated that he could do business where he wanted.

¶12.The justice of the peace issued a Temporary Order of Protection against Walters on April 23, 1999. A hearing on Wetherill's request for an Order of Protection was set for May 13, 1999. On May 6, 1999, Walters filed a Notice to Vacate Hearing and a notice that he was appealing the order to district court. On July 27, 1999, without hearing, the District Court dissolved the Temporary Order of Protection. Wetherill appeals.

## STANDARD OF REVIEW

¶13.In dissolving the Temporary Order of Protection, the District Court simply reviewed Wetherill's petition, accepting her allegations as true, to determine whether her allegations were sufficient to justify the temporary order given the statutory criteria. This court function is analogous to a district court's review of a plaintiff's complaint to determine whether the plaintiff has failed to state a claim. In reaching either determination, the district court reviews the allegations made by the party seeking a remedy and, accepting those allegations as true, determines whether that party has alleged sufficient facts to state a claim for relief. Accordingly, as in our review of a district court's determination that a plaintiff failed to state a claim, we will review the District Court's dissolution of the Temporary Order of Protection to determine whether the District Court was correct. *Cf. Powell v. Salvation Army* (1997), 287 Mont. 99, 102, 951 P.2d 1352, 1354. We will affirm

the District Court's Order only if we determine that, accepting the allegations contained in the petition as true, Wetherill was not entitled to a temporary order of protection. *Cf. Powell*, 287 Mont. at 102, 951 P.2d at 1354.

## DISCUSSION

¶14. Whether the District Court erred in dissolving the Temporary Order of Protection?

¶15. On the basis of the allegations contained in Wetherill's petition, the justice of the peace found that Wetherill was in danger of harm and issued a Temporary Order of Protection. After Walters filed a Notice of Appeal, the District Court reviewed Wetherill's petition without a hearing and determined that the allegations, even if true, did not support the issuance of the order. The court concluded that the allegations did not establish that Wetherill was in danger of harm from Walters or that Walters had stalked Wetherill. Rather, they established that "Walters had unwisely engaged in offensive banter with Wetherill, and when it was brought to his attention that she took offense, Walters got defensive and refused to apologize." Consequently, the court dissolved the Temporary Order of Protection issued by the justice court.

¶16. Section 40-15-201, MCA, provides in relevant part:

(1) . . . The petitioner shall file a sworn petition that states that the petitioner is in reasonable apprehension of bodily injury or is a victim of one of the offenses listed in § 40-15-102 . . . and is in danger of harm if the court does not issue a temporary order of protection immediately.

(2) Upon a review of the petition and a finding that the petitioner is in danger of harm if the court does not act immediately, the court shall issue a temporary order of protection that grants the petitioner appropriate relief.

Pursuant to § 40-15-302, MCA, a temporary order of protection is immediately reviewable by a district court upon the filing of a notice of appeal. A district judge "may affirm, dissolve, or modify" a temporary order of protection. Section 40-15-302(1), MCA.

¶17. A petitioner is entitled to a temporary order of protection if upon review of the petition, the court finds that the petitioner is in danger of harm if the court does not act immediately. *See* § 40-15-201(2), MCA. Upon reviewing the allegations contained in the

Petition, we agree with the District Court that Wetherill was not in immediate danger of harm.

¶18. Accepting Wetherill's allegations as true, Walters engaged in offensive and inappropriate behavior on February 23, 1999, by asking about the state of Wetherill's marriage and stating that he should slap Wetherill's husband around. These statements, if true, are especially inappropriate considering that they were made by a law enforcement officer while on duty. Police officers, while on duty, represent the enforcement power of the State of Montana and, therefore, should perform their duties with the utmost respect for their fellow citizens. Clearly, a reasonable person could have been intimidated by the statements as alleged on February 23, 1999, especially if made by a law enforcement officer.

¶19. However, the circumstances of the subsequent contacts between Wetherill and Walters, as alleged, do not indicate that Wetherill was in immediate danger of harm. Wetherill alleged that on March 11, 1999, Walters requested that Wetherill call him at home to settle their dispute instead of settling it through the mayor's office and raised his voice. On three subsequent occasions, Walters entered the station looking for coffee without any significant incidents occurring between Walters and Wetherill. As the District Court observed, these allegations establish that once Walters was informed by Wetherill that she was offended by his statements, he became defensive and refused to apologize. These allegations do not establish that Wetherill, or her husband, was in immediate danger of harm.

¶20. We conclude that the District Court did not err in dissolving the Temporary Order of Protection.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER

1. Apparently, Walters wears a prosthesis.